We have 4090657 Vermilion Coal Company v. Black Beauty Coal Company. We have for the appellant Michael Pollard. Mr. Pollard? And for the appellee, Kenneth. Good morning. May it please the Court. My name is Michael Pollard and I represent the appellant, Black Beauty Coal Company. There are a couple of issues before the Court today in this somewhat unusual procedural posture of the case. The first is whether the trial court refused to compel Black Beauty's motion to compel arbitration based on the arbitration agreement. That motion was ruled on after the Court entered a preliminary injunction. We had asked that it be ruled on in advance of the hearing on the preliminary injunction, but it was ruled on in a docket entry order after the fact. And then the second thing is whether the preliminary injunction itself was improperly granted, either because the elements weren't met or because it should have been presented to the arbitrators. A couple of first principles about motions to compel arbitration. They are subject, like this one in this case, to interpretation because we're basically interpreting contractual provisions in the lease agreement between the parties. The interpretation is made against the backdrop that arbitration is a favored method of resolving disputes in Illinois. And with that, I guess I would turn to the provisions of the lease that are at issue. Why are not the arbitration and the preliminary injunction capable of existing at the same time? In other words, it seems to me from the point of view of Vermillion, they're saying better enjoy what they're proposing to do or there will be nothing to arbitrate because they'll destroy this mine by, is it blocking it? Is that the right term? Putting in the concrete? Sealing. Sealing. That's right. Why isn't that correct? Why shouldn't the court say don't seal the mine, don't destroy what is subject to arbitration, and then we'll hold the status quo and then let the parties go and arbitrate what's going on? Well, there are several. It's a multi-layered response. Number one, that's not what the contract says, the arbitration contract. Article 24 of the arbitration contract has what I would describe as a very broad and a mandatory language. It says, if there's any matters in dispute here under the lease, on which lesser and lesser cannot finally agree, such matters or matters shall, we know shall is a mandatory term, be referred to a board of arbitrators. Okay? That's the arbitration. So you mean your client can go ahead and destroy what is going to be the subject of the arbitration and doesn't matter? Well, it's not, I'm not destroying what is the subject. Well, what if Actually What if it, you're giving me, no, I want to ask you this question. You're giving me an absolutist view of this contract language. Let's assume for the moment that it would destroy. That sealing the mines essentially destroys the property at issue. Then Arbitration is still required? An injunction can be issued by the arbitrator. That's what this contract calls for. The arbitrator can enjoin? Absolutely. That's what the contract says. Where is the arbitrator's powers to enjoin? In, well, the court has no powers to enjoin. Okay? The word court never appears. The court looked at three provisions, okay? 24.1, the last sentence, and the last sentence of 24.1 says the binding arbitration provisions set forth shall not serve to limit or diminish the right of either party to this lease agreement to seek conjunctive relief for breach hereof. You can seek conjunctive relief. If you want to say that injunctive relief is to be granted by the court, you know how to say it. That's what Donaldson, Lufkin, and Jim Rett said in the Illinois Supreme Court. You want to reserve the question of arbitrability specifically to the arbitrator, you know how to say it. They could have reserved the issue of injunctions to the court. They didn't. What's an example in Illinois law of an arbitrator issuing an injunction? A Liberty Chevrolet case we cite suggests that arbitrators can grant injunctions. It's one of the cases I've never heard of. And to enforce an arbitrator's injunction, how would you do that? Motion to enforce, motion to vacate. 22.5, the other provision relied on by the trial court, talks about injunction against breach. Again, nowhere is that issue reserved to the court, although it could easily be and it wasn't. A lot of things could have been done to this lease to make it clearer, but we're stuck with it. What about the language about this doesn't affect any of the rights in law or equity? Well, exactly. Rights in law or equity, it refers to statutes. That's not unlike the Kusumano case that came before this court, where the question was, okay, you've got an arbitration agreement, there's all these contractual provisions, what if somebody wants to sue under a statute for the Franchise Disclosure Act, what do you do? What did this court say? Hmm, that's an interesting question. Let's send that one to the arbitrator to see if they will decide it. I think the ambiguity here is the same thing. If the court doesn't agree, and I don't think it should disagree, I mean, there's a very clear, broad, mandatory arbitration provision, no specific reservation to a court here, then what does this court's jurisprudence in all kinds of cases say? You let the arbitrator decide. If the arbitrator issues an injunction, that's what favors the party's contractual rights. So, yes. And another point that I really think bears raising here is this injunction that's set forth in the suit is really a full frontal attack on black beauty's rights under paragraph, I believe it's 20.1, of the lease. I mean, it is a question that could not more clearly arise under the lease. Now, they're not going to allege it in their injunction, but 20.1 says, lessee, black beauty, shall have the right, this is prior to cancellation of the lease, shall have the right at any time without being in breach of the lease to cease its mining activities and remove the improvements made without any liability to the lessee. We can cease our mining activities and remove our improvements. Is that the provision that then says you'll have to pay a million dollars? Where the annual royalty doubles, etc. What? Which, of course, suggests there's an adequate remedy to the law, too, doesn't it? But that is a question arising, it couldn't more clearly arise under this lease. What about sealing the mine? Sealing the mine. Where does your right to do that appear in the contract? Well, I think that's cease mining and then you have to start complying with regulatory activities. So, you're forced to seal the mine immediately? You weren't forced to seal the mine immediately. I will tell you this, okay, this injunction is massively, massively overbroad. Massively what? Overbroad. We told the trial court in closing argument, if, if, you're going to issue an injunction, issue one, A, that it is an aid of arbitration and limited to sealing the slope. And if that had happened, yeah, there was an injunction, an aid of arbitration to do that. But instead, we have this massively overbroad injunction which encumbers all of our substantial improvements on this property, which have now been lying fallow, unused for since April 29th when the TRO was first issued and since this preliminary injunction was issued later. That's massively overbroad and that's an issue squarely should have been addressed by an arbitrator. So, did I answer your question, Your Honor? Well, I think so. I think that leads to the next question. If you just told, don't seal the mine and leave the stuff there, pending arbitration, how are you hurting? If we send it to arbitration, you tell us to seal the mine and we can remove all the equipment. No, no, I'm sorry, I wasn't clear perhaps. What I'm suggesting is just hold the situation at the status quo, pending arbitration. Don't seal it, don't remove the stuff, and then let the arbitrator resolve everything. How are you hurting? We're hurting because we have all this equipment, which is expensive stuff. The trial judge didn't let us get into evidence how much we spent on it, but it's substantial. Is the mine currently operating? No, Your Honor, this is all lying fallow. We wanted to move it to other plants, and so how does that at all advance the ballgame? Arbitration is supposed to be economic efficient resolution of disputes. We have all this stuff lying fallow now for eight months. In that eight months, no one has asked to come down. There was a visit, but there have been no experts there doing anything. The complaint said, you know, let's hold the mine, forestall the mine closure for 60 days, some sort of definite time, or at least 60 days. I think they said, it's been eight months, this is indefinite, we can't move anything, and yet we think we have a perfect right under the lease to do so, and that's what the lease says. It's a dispute arising under the lease, it should have been arbitrated. And so I think this was a massively overbroad injunction. This Court has taken positions in the past stating that arbitration means what it says, and rejecting claims, people who try to get into court when there's been an arbitration provision in contract. What seems to me to make this case different, and I'd like to explain maybe why I misunderstand it, is that in none of the other cases, and I think I've been involved in a few of them, do I recall a situation where the subject of the arbitration, short of being enjoined, might be damaged, damaged maybe perhaps irreparably. That's what this whole sealing business I find particularly troubling, because supposedly if it's sealed, it's sealed permanently, I think the record shows. Why isn't that a distinction between this case and all the other arbitration cases that we've discussed? Well, I don't think it's a fair reading of the record that sealing is a permanent thing. In mining, you can undo lots of things, but you don't... So the sealing could be undone? That's my understanding. So the sealing could be undone. And it's really, it's not as clear as I would like it to be. What if the sealing couldn't be undone? I'm sorry? What if our conclusion is from this record that the sealing couldn't be undone? Doesn't that change this case from the other arbitration cases? So that there would be nothing left for the arbitrator to arbitrate if the trial court hadn't enjoined you? Actually, there's a whole lot of stuff that the arbitrator... What this case is about, what this case is really about, and that's why this is all, to my mind, a bit of a sideshow, is has Black Beauty removed all economically mineable coal? Such that the provisions that the one your Honor talked about, the double royalty, this is about money. This is about what? About money. Well, most of the action usually is, Counsel. Well, but of course, Counsel admitted the only thing that's arbitrable in this case is money damages. But that's the only thing that isn't fled here. But the real dispute here is about money. Is there a lost coal claim? Is there... Has all recoverable coal been pulled aside? And that has now been pushed way into the background. It hasn't been asserted. That's how... Also, you know, you can determine economically mineable coal drilling reports. There's other ways to do it. So I don't think the ceiling of the mine is as draconian as the other side makes it out to be. But even if it were, if there were an order sealing the mine in aid of arbitration or keeping it open for some reasonable period of time for them to do whatever they have to do, which hasn't been done during the whole life of this state. But having all of our equipment there, that's just patently unreasonable. And all it's trying to do is force an economic hardship on us and deprive us of the benefit of the burden, the benefit of the contractual language in 20.1 that police contemplates we remove all that stuff. Have you followed the steps under the arbitration clause demanding an arbitration? Oh, yes. And they won't name one, right. You know, there is another arbitration between these parties. This case was filed in Vermillion County by Vermillion. It was state. I mean, that's another procedural oddity of this case. I'm not sure I understand. There was a case filed by Vermillion against Black Newby. It was state pending arbitration. The parties arbitrated. Vermillion then, Vermillion in that case claimed they wanted to cancel the lease. They prevailed to some extent on their claim. This is like for black long excise taxes or something like that. They then sought to vacate part of it in the central district. That went up to Chicago. So that actually is a pending case in Chicago right now, the vacation of the arbitration between these two entities. You must be referring to federal court. I think it's state court. How did it go up to Chicago? I believe it's not in the record. I didn't have two days to draw that out, but it's currently up in Chicago in state court. So there is this arbitration pending there between them. And so what was there? There was this shell of a case that was state, and all of a sudden this injunction motion gets filed down here because there's already a pending case in play. And the state doesn't get lifted until after the preliminary injunction is already granted in this case. So procedurally I think that's quite a problem. But I think to sum it up on the arbitration issue, I think the trial court's analysis of the interplay between the contractual  Number one, with respect to that 20.1 and our right to remove surface improvements and all that, that is a dispute arising under the lease which they sought to adjoin, and the court didn't effectuate the clear language of the arbitration provision. Really essentially read it out of the contract with respect to that right. Two, I think to the extent Vermillion raises what it considers to be ambiguities about the arbitration provision, I think following the precedent of many of this court's decisions, who's somano among them, that question should have been deferred to the arbitrators in the first instance. Will they grant an injunction? Probably would. That's what it says. Two, I really don't think there was any effort to harmonize provisions. I think if you harmonize them, what it means is the arbitrator does these things. You can invoke statutes. You can get injunctions, but the arbitrator doesn't. That's what the parties contracted for. I think it also read into the contract language which doesn't exist. That is that injunctions can only be issued by the court. Easy enough to say. Lots of contracts say that. This one didn't. So I think it was wrong on that. Again, Counsel, I have to concede my inexperience in this point. I'm wondering which case talks about injunctions issued by arbitrators and their effect. The Liberty Chevrolet case. Tell me about that case. I think it authorizes arbitrators to issue injunctions. There's also the notion. Did the arbitrator enjoin somebody from doing something? I don't know if the arbitrator did, but I think it was said in there that arbitrators can't. Well, my question is I'm not familiar with any case where an arbitrator has ever enjoined somebody from doing something, and we've seen the results of it even discussed in litigation. This is the first time. It's a strange notion to me. Injunctions to me, enjoining someone to do something, has always struck me right up until this moment as being a judicial function. Arbitrators decide civil aspects of a case, who gets what, how much coal there is left, and who's going to pay what for that. That would be an arbitrator's decision, arguably. But to enjoin someone from doing something, this is the first time I've heard about that as being within the powers of an arbitrator. Liberty Chevrolet v. Rainey, 2nd District, 2003. The 2nd District affirms the trial court's decision to compel arbitration of counterclaims, including claims for injunction and declaratory relief. Was someone enjoined by an arbitrator in that case? No, the suits were here, and he said, no, it goes to arbitration. The trial court said, send us to arbitration, and the 2nd District said, yeah, arbitrators can issue injunctive relief. So you're not familiar with any case where an arbitrator's actually enjoined someone from doing something and has been subject to discussion in any Illinois cases? I imagine they did in that case. Other than that, I don't know. Would it be the process where the parties arbitrated, the arbitrator issued an injunction, the party against whom the quote-unquote injunction was issued said, I'm not paying any attention to that, then there's an action in the circuit court to enforce the arbitration award, which includes the injunction. Absolutely. That invokes the power of the court to do so. Absolutely. Correct. So on the preliminary injunction point... Do I have a couple minutes? No, your time is up. You can speak if you want. Your time is up. Mr. Eaton? Good morning, Your Honors. Tim Eaton on behalf of Vermillion. Let me address some of the questions, Justice Feiglin, particularly that you ask, and Justice Smirnoff, your comments with respect to the lease. We are bound by the lease, and I think Judge Feiglin did a very good job in looking at all of the provisions of the lease. 22.5 talks about an injunction against breach, and it does say law or equity. 22.6 says that you can have all the remedies can be cumulative, and it also talks about concurrent. Well, what sense would it make to use the word concurrent unless you were talking about both arbitration and court action? And the amazing thing is if you look at the argument on their motion to compel arbitration, Judge Feiglin specifically asked Black Beauty's counsel, counsel, do I have the authority to enter the TRO or the preliminary injunction?  Where does it say that? 24.1, the last sentence of this broad arbitration clause, as counsel referred to, it says nothing in this arbitration clause shall diminish or restrict the right to enter injunctive relief. And if you read that in the context of 22.5 and 22.6, it's clear, and Judge Feiglin was absolutely right, that a court can enter injunctive relief based on the lease. And from counsel's concession in the trial court that she had the right to enter the TRO and the preliminary injunction, read all those together, the court was absolutely right. So what part of the requirement of arbitration do you concede, if you concede it at all, is still left? That is, there's all this talk about arbitration. Black Beauty has nothing left to go to the arbitrator and resolve. It's all now going to be resolved by the court? Or where do we stand here, Mr. Reid? The issue that would be left to be resolved would be the money that's owed to us to the extent that there's still mineable coal there and hasn't been mined. You would have to determine the fair market value. Then you would have to determine the amount. And then we would be entitled to what's left. Who determines these? That would be an arbitration panel. We're talking about monetary damages. But what we asked Judge Fahy to do, and Your Honor hit the nail on the head, was don't let them seal that mine until we can get in there and determine what mineral reserves there are, get experts in there to determine what is economically mineable. And Your Honor, what's missing from this whole discussion is they gave a notice of cancellation on July 17th prior to the preliminary injunction hearing. That triggers Section 21.2, which says under the cancellation provisions, until you've met all of the obligations with respect to mineable coal, you cannot remove equipment, personal property, buildings, and other improvements. That's the applicable provision that we're talking about here. Did you ask that all arbitration be enjoined and did the trial court agree with you? No. We oppose the motion to compel arbitration on the issues relating to the complaint, which is seeking injunctive relief. I'm not sure I understood that. Okay. Run that by me. You oppose arbitration on what? We oppose arbitration on the issue dealing with the injunctive relief issues. Don't seal the mine. Keep the improvements. Let us determine what coal is there. But with respect to monetary damages, we have been consistent all the way through. Because we're not seeking it, by the way, Your Honor, in this particular complaint. With respect to monetary damages, that's arbitrable. Well, the Missionary College says eight months. It's lying there failure. We have all these expenses built up and whatnot. Has there been some, in this record anyway, some statement by Vermillion saying, hey, this is great. You've been enjoined from sealing the mine. Let's get this matter to arbitration now and resolve the underlying differences. Has that been your position? Right now, there's a preliminary injunction in place. You can find it to what's in the record.  And at that point, until the hearing that was held in July, the focus was on the preliminary injunction and the TRO. With respect to what's occurred there, all I can say is have it proposed. Well, let me ask it this way. Yes. Does your client object to having arbitration, using the arbitration provision for the remaining issues that you mentioned? How much coal is there and how should this be resolved and who pays whom what? With respect to who pays whom what, the answer is no, we do not object. With respect to how much mineable coal is there, that goes directly to the issue of whether or not they can move their improvements. Because 21.2 says until that mineable coal is removed, the improvements must stay in place. And by the way, that right we have is not only under the lease, but is under the warranty deed. And the warranty deed is not subject to arbitration. As Judge Fahy said, I find two independent bases here for this relief. The lease and the warranty deeds. And there is no arbitration clause in the warranty deeds. All we're saying with respect to the issue that's before this court at this time, the preliminary injunction was proper because it allows the improvements to stay there. And how important are those improvements? The best evidence of that is the parties' lease themselves. The parties agreed, Black Beauty agreed in Section 21.2, until the mineable coal is removed, buildings, equipment, personal property and other improvements cannot be moved. That's what they agreed to. Judge Fahy is not making this any broader than what the parties agreed to. Well, if we were to affirm the preliminary injunction or what the injunction don't seal it, we send it back to the trial court to do what? At this point, the trial court would consider the complaint that's before her and she would determine whether or not a permanent injunction is necessary until the provisions of the lease are met. And the provisions of the lease require them to remove all mineable coal. So the trial court, the arbitrator would have to determine to what extent there's mineable coal left and all those other kinds of issues? Or if there is. And if there isn't, then the injunction could be lifted, the improvements could be removed. Or if there is with respect to how much they were owed, an arbitration panel could determine that. And Mr. Potter referred to another arbitration. And let me be clear on that. And I believe it is in the record. And it dealt with royalties that we were owed earlier. I think it was like 2003. And there was an arbitration. That dealt with money only. They had deducted from our royalties certain severance taxes which we objected to. Clearly that went to arbitration. There's some litigation about that you referred to? There is. We won on the issue of the severance taxes. There were other remedies which we felt the arbitration panel didn't decide properly. So we filed a motion to vacate. And it's pending in the Circuit Court of Cook County. We could file that anywhere we chose to file in the Circuit Court of Cook County. And it's pending. It's a motion to vacate partially the arbitration. You mean you deprived us of the opportunity to review that issue? Yes. Okay. That's right. So why does an interpretation of this lease go back to the arbitrator? Because, Your Honor, the parties by agreement decided that there may be circumstances when injunctive relief is necessary. And I think there could be no better case or example of that when on April 28th, we served them with a notice that we were seeking a TRO. While we were in Judge Fahey's courtroom during the day on that hearing, what were they doing? Sealing the mine. They spent all day sealing the mine because they wanted to avoid the possibility that we would be able to come in there and determine how much of the coal and mineable coal is left. They're also depriving us of an opportunity to get a successor lessee in there who might want to take over and mine the rest of it so we can get our money. And why are they doing that? Because they entered into a new contract with Bear Run, with Duke Energy, where they're going to make more money. And Mr. Burgraff said, and, Your Honor, I believe this is in direct response to an earlier question that you asked Mr. Pollard when you were talking about what harm would there be if they sealed the mine. Their witness said it would cause harm to Vermillion if that happened. And he also said they had no immediate plans to move those improvements, despite what Mr. Pollard said in his argument. That was their testimony. They want to keep the competitor out of there. They want to be able to sell at a higher price at a different mine. That's why they're shutting it down. Now, can they do that? If they comply with the lease, absolutely. They didn't. They did not comply with the lease. That's why we had to run into court and seek that protection. Justice Mycroft, I'm not sure I answered your question fully with respect to – But doesn't the arbitrator decide whether there's compliance with the lease? The arbitrator can in certain circumstances, but these parties contracted to allow for injunctive relief. Well, I'm not quibbling about the injunction. If you have a preliminary injunction, why shouldn't we send it back to an arbitrator to answer these questions instead of back to Judge Peggy? Well, because the parties contracted that they could do either. The parties contracted in 22.6 that they can have concurrent remedies. If the court were to decide that you have to go to arbitration, that would be in violation of the lease. And as the Donaldson case said in the Illinois Supreme Court, where it's clear that the parties have agreed not to arbitrate or to have concurrent remedies such as arbitration and going to court, they're going to respect the lease. It's only where there's an ambiguity that they will make that decision subject to the arbitrator. Here there isn't. The parties had two different remedies. Because if we didn't have the right to get that TRO, on the 29th they would have sealed that mine. It would not have been able to be accessed. We would have no way of determining what mineable coal there was. We'd have no way of determining whether we could sell it. We'd have no way of determining damages. Judge Fahey found we were irreparably harmed, those were her words, by them going forward and sealing the mine and removing the improvements. And we did not have an adequate remedy of law because, Your Honor, before you can determine monetary damages, we have to get in there with experts and determine what's mineable, what's economically mineable, what's left, and all those issues can then be subject to arbitration. Ms. Dayton, I'm not sure I still understand how this works. Leaving aside for the moment your argument of the emergency nature of the need for the TRO to preserve the status quo, stop the sealing of the mine. It seems, and correct me if I'm mistaken, that your argument seems to be that Vermillion has the choice under the contract with Black Beauty to either handle this dispute with Black Beauty in the courts as any other civil litigation, resolving the disputed issues of what's left, mineable coal, what's it's worth, and all the rest of this, who violated what aspects, if any, of the lease, or to have the matter, indeed refer the matter, to arbitration. I don't recall ever seeing anything quite like that before. And again, I say, leave aside for the moment TRO, because I think that might be a difference. That a party is claiming the contract gives them the right, and does it give you the right as the plaintiff to say, I want arbitration, not to have the court resolve it, or I want the court to resolve all this, not to have arbitration. Have I understood your position correctly? You have, and, Your Honor, both parties agree. By putting in the last sentence in the arbitration clause, it says nothing in this clause shall limit, or restrict, or diminish the right of a party to seek injunctive relief. And that doesn't stop at a preliminary injunction. That goes all the way to a permanent injunction. Now, could there be a permanent injunction in place, and then arbitration start with respect to the value of that mineable coal? Absolutely. But we're entitled to a permanent injunction that determines whether or not they're allowed to remove their improvements until it's determined that they've satisfied the obligations under the lease. Well, but that kind of begs the question. Is the trial court on remand, if we were to affirm the granting of the TRO to stop the ceiling, is the trial court on remand supposed to resolve all these things? Here's what I envision if it goes back. First of all, you've already affirmed the TRO, so you'd be affirming the preliminary injunction that was entered. And then I envision it going back, and the trial court determining whether they should be permanently enjoined, because a preliminary injunction is preliminary. They're permanently enjoined from removing the improvements until the issues of whether there's how much is owed, which could be subject to arbitration. I want to catch that verb. You say, which could be subject to arbitration. Would it be subject to arbitration, or is that something that the court would have to say? The monetary amount that we would be owed under the lease with respect to the mineable coal that is still there would be determined by an arbitration panel, and Vermillion would not object to that happening. But before you get to that point, the threshold issue that goes to the issue of the injunction is, did they comply with the lease, and can they move their improvements? In order to answer that question, you have to determine, is there mineable coal there? And Judge Fahey would have to make the determination to issue a permanent injunction, as she has here, that there's a fair question that there's mineable coal there. She would have to make that determination, there's mineable coal there. She could go further and say, and here's how much. I'm done. Arbitration panel, you decide how much. Well, isn't your position really more one where you don't want, it's kind of like going back to don't change the status quo until the arbitrator has decided. That is, one, don't seal the mine, and two, don't remove the various improvements until such time as the arbitrator has decided.  That's really all you're looking for, too, isn't it? What we're looking for is a compliance of 22.1, which means their equipment, their personal property, improvements in buildings have to remain in place until it's determined that they satisfy the lease. Determined by the arbitrator? If the injunction stays in place, and there's a permanent injunction in place, yes, the arbitrator would determine how much they would owe us in terms of satisfying the lease, yes. When we get to a how much, it's an arbitration issue. When we get to have they satisfied the lease for purposes of removing the injunction, that's Judge Fahey's issue. She's the one who entered the appointment. She would have to then decide about the mineable coal remaining, if any? She would, because that's one of the elements we have to prove under 22.1 as to whether they've met the obligations. But may I comment on that briefly, too? Sure. Counsel has said in their reply brief, they said the real issue here is, is there mineable coal? And it's undisputed, according to Black Beauty, that there is not in Mines A and B. First of all, the evidence is in conflict because they filed something in December 2007 with the SEC that says there's 19 million tons of mineable coal. Three weeks before they shut down the mine, in February 27, 2009, they filed with the only Department of Natural Resources that there's 8.5 million tons. Three weeks later, they say there's 150,000 tons. Where did it go? So she believed that they were not credible in their presentation so that there's a fair question, by either preponderance of the evidence standard or fair question, that there's mineable coal. But what they leave out of the equation is, this lease covers A, B, and E as far as areas. They didn't even know Area E, Mr. Quam, the person who was on site, was part of this lease. They hadn't read the lease. No one was reading the lease of Black Beauty. Area E hasn't been touched, and the only evidence in this record was the testimony of Mr. Keady that there's 40 million tons of mineable coal if they strip mine Area E, or 12 million tons of mineable coal if they go under the surface. That hasn't been touched. Black Beauty has no evidence with respect to that, whether it's mineable or not. And of course, that's subject to the lease. They haven't even touched it. Well, if they haven't touched it, is there any issue of removal of improvements? There shouldn't be, because if they haven't touched it, they obviously haven't mined it. I still don't understand, Mr. Eden, why this issue, 19 million, 8.5 million, 150,000 tons, why that is not any matter in dispute here under that should be decided by the arbitrator. Because the parties had agreed, Your Honor, to be able to do both. They agreed that they could have concurrent remedies. Either party, not just us, either party can opt for... So does Donaldson really say that you can have concurrent matters? Everything I read in Donaldson says give it to the arbitrator. No, actually, Your Honor, with all due respect, what Donaldson says is that the court can determine the arbitrability issue if it's clear from the terms. And if it's not clear, then the arbitrator determines arbitrability. But it goes on to say, in the cases that have cited Donaldson, is where it's clear that it's not subject to arbitration, the court can make that determination as well. What we have is a hybrid, and I think Justice Steinman hit on it, and I haven't seen it in the cases where the parties have opted either route. If you determine that we can only arbitrate this issue, you're reading out the last sentence of the arbitration clause which says nothing there can prevent us from seeking a judgment. Your time's up, but I have additional questions to clarify. It seems to me that the interests of Vermillion are fully served, given what they contracted with and are concerned about. If the court were simply to say, no one should change the status quo, remove nothing, seal nothing, until such time as an arbitrator, who Vermillion at least envisioned as part of this process, determines all these factual questions and comes up with some resolution about it. Why am I mistaken? Well, Your Honor, and perhaps you didn't intend to delimit it, or perhaps you did, but if the court were to keep in place a preliminary injunction as to all the improvements identified by Judge Fahy in her order pending arbitration, that would be one resolution that then we determine what mineable coal is, etc., and it would be an injunction in furtherance of arbitration. That would be one route to go. But I think it's very important to add that the parties have contracted that all the improvements would have to be involved, and Judge Fahy realized that by identifying them. It wouldn't just be sealing. It would be everything. There's drainage. There's ventilation. There's a lot of things that would have to be done. If that's the way the court was going to go, it would be to keep the preliminary injunction in place in aid of arbitration. But we submit that we're entitled to go forward and get the permanent injunction, and if it's to monetary issues, then we would be before an arbitration panel. Thank you, Your Honor. May it please the Court again, Michael Clark, in response to questions. One thing I didn't hear Mr. Eaton say is why any of these surface improvements have anything to do with accessing the mine in terms of determining how much mineable coal is there. You see how broadly they intend to use this arbitration provision. Judge Fahy is going to determine 20.1, whether there's economically mineable coal. Those are all issues for expert arbitrators in the industry. That has to stop. Is the mine currently sealed? The mine stopped. It is not currently sealed. Is it sealed? No, it's not currently sealed. If you were to preserve it as not currently sealed, let us get rid of it, move our leasehold improvements. You know, it wasn't mentioned here today. During the life of this lease, Black Beauty has lost $50 million on this mine, 10 of which has been paid to Vermillion. Ten of which what? Ten of which has been paid to Vermillion. This mine is not economically mineable. There's all kinds of dangers in it. They don't want to send people down, and it would be exorbitantly expensive to attempt to make it safe. Those are all issues for arbitrators. That's what 20.1 is all about. This is just holding Black Beauty hostage to a bad business situation, rather than getting on with the business and seeing whether this contract provides any money to Vermillion, because we've stopped mining in a quarter of a billion dollars. Well, you heard Mr. Eaton say they're ready to arbitrate all this stuff. Yes, they're not. They're not, though. No, they want to go to Judge Fahey and talk about how much is economically mineable, and they're going to try and drive this that way. You heard Mr. Eaton say, the only thing for the arbitrators is how much money, after all these other determinations have been made. That is not what this contract says. Justice Appleton, you were exactly right in your question. Any arbitration decision gets reviewed by a court. You can review it, and there's a court review after that, but there is nothing that says that all of these cases should be. I think that it really would be an injustice to allow the encumbering of this very, very expensive surface improvement just sitting out there, lying fallow that can be moved around for a company that's already lost $50 million. And if you want to keep the mine sealed and refer everything to an arbitrator, if I were up there, I might do the same thing. But the surface improvements need to be, this injunction needs to be determined as being overbought. Lastly, the warranty deeds and the preliminary injunction. We mentioned in our directed verdict motion, in our closing argument, four times in this brief, never once, never once has Vermillion ever commented on the sentence. I encourage you to take a look at it. Ever commented on what? On the sentence we have referred to, the last sentence of page one of the lease, this is where all these warranty deeds come into play. This sentence could not be clearer. Lessee, Vermillion, also grants to Lessor, Black Beauty, for the period of this lease, all of the coal mining rights and privileges that Lessee owns under the deeds by which it now holds title. So this lease, by the way, is not canceled. Serving a notice of cancellation isn't sufficient to cancel it. They have to agree we've complied with all the terms. They haven't done that. So this lease isn't canceled. During the life of this lease, they've granted all the coal mining rights they have under the warranty deeds to us. So they serve no basis whatsoever at all. There wasn't an output response to that today, not in the closing argument, not in the motion for a directed verdict, not in the brief. We have those rights. So you're saying we do not have to remand for the preliminary, I mean for the permanent injunction hearing. We could simply affirm the trial court and refer this to arbitration. I think you should vacate the injunction. Here's the relief. You should vacate the injunction and remand the whole thing to arbitration. Alternatively, if you were going to affirm any portion of it, you affirm that portion that keeps the mine sealed pending arbitration. If we determine the injunction to the extent it impinges on all these multimillion-dollar surface improvements, you let those be used. Because that's the flow of it. If we lifted the injunction, what would stop Black Beauty from sealing the mine the next day? Nothing legally, which is why if you want to keep the mine sealed. Is Mr. Eaton correct? You were in the process of sealing the mine the day the injunction was issued? Right, because when you close the mine, you don't want it open. You don't want it accessible. You're supposed to seal it. There's regulations and all that kind of stuff. We're trying to do that. What's involved, and this is because I don't understand coal mining. Which is why this is arbitrable. Because I don't understand it all that well either. All right, go ahead. But when you seal a mine, you pour a bunch of concrete to seal off the entrances and exits to the mine, right? What's involved in, and I understand that there's not just liability issues that cause that to be necessary, but also governmental regulations require that. But as a practical matter, what is involved with sealing a mine and then opening it up? Is it more than two guys and two sledgehammers? I thought there was testimony from Keeney that there would be permanent damage to the mine, that there have to be operating machines that air it out and pump the water out. Section 6.2 of the lease talks about a lost coal claim. They could have this right on the lease. If we want to make a claim like that, it's right on the lease, it's arbitrable. But that's not even part of this case. But that doesn't answer the question you're asking. There may be some ancillary damage. So why is Mr. Eaton's argument not correct? This lease clearly envisions two different methods of resolving problems. In my opinion, they have in the contract set forth the option of going to the court or the option of going to arbitration. They talk about concurrent powers, rights, and remedies. They don't talk about alternative forms. They don't say that certain types of forms are reserved. The only form mentioned in this lease is the arbitral form. So could you bring a common law cause of action for negligence, even though it's not in this lease, in arbitration? Yes. Can you get an injunction in arbitration? Yes. Your Cusimano case. Could you sue under the Franchise Disclosure Act, even though it's a statute because it's referenced in here? Could you do that in arbitration? Yes. Will all those arbitrations ultimately be reviewed by a court of law? Yes. Do you do coal mine work? I'm sorry? Do you represent coal mines on a regular basis? I do this. No, I don't. Well, in other situations with arbitration clauses, do you very often see a parallel system, concurrent with the court and the arbitrator? I think most leases specifically reserve questions to one form or another. And this one didn't. It's the only form here that has arbitration. Anything else?